UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA JEDERMANN,

                                                                Plaintiff,                       DECISION AND ORDER

-vs-

                                                                                           1:19-CV-0761 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                                               Defendant.
_____

INTRODUCTION

Plaintiff Lisa Jedermann ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Nov. 7, 2019, ECF No. 8; Def.'s Mot., Jan. 6, 2020, ECF No. 10. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is denied, the Commissioner's motion (ECF No. 10) is granted, and the Clerk of Court is directed to close this case.

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the underlying facts and procedural history in this case. Plaintiff filed an application for SSI benefits on August 22, 2016, alleging an onset date of November 1, 2006. Transcript ("Tr.") 19, Sept. 9, 2019, ECF No. 6. On November 7, 2016, the Commissioner notified Plaintiff

1

that she did not qualify for SSI benefits. Tr. 95. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 108.

Plaintiff's request was approved and the hearing was held via video conference on July 25, 2018. Tr. 38. The ALJ presided from the national hearing center in Falls Church, Virginia, and Plaintiff appeared with her attorney, Jeanne Murray, from the Buffalo hearing office. Tr. 40. Vocational expert Cyndee Burnett testified by telephone. Tr. 67–73. In response to the ALJ's opening questions – "What problems do you have? Why can't you work?" – Plaintiff explained:

> Well, I've been suffering from . . . different corneal surface diseases for 13 years, since a – I had a car accident, and stones flew through the windshield and got me in my face and my eyes and my ears and my nose. And then, ever since then it's just been just a spiral downwards of all kinds of things. I got diabetes, I got thyroid . . . And now, last week I was just diagnosed with asthma. I'm losing the feeling in my findertips – or in my hands and arms, and my feet are numb . . . . I have double vision and vertigo, and I pass out a lot . . . . And then I have Sjorgren's, which is dry mouth, and sometimes I sort of choke on my tongue . . . . I had endometriosis, tendinitis, a hemorrhoidectomy. I had ear surgery. I had two biopsies on my eyes – eyeballs, eyelids . . . .

Tr. 43–45. In addition, Plaintiff indicated that she has been diagnosed with conjunctivitis, and is being treated for mental health issues. Tr. 46–48.

In her decision on September 19, 2018, the ALJ found that Plaintiff was not disabled under § 1614(a)(3)(A) of the Social Security Act, and denied SSI benefits. Tr. 32. On April 10, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial

review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). 42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to SSI benefits. *See also* 42 U.S.C. § 1383(c)(3).

A reviewing court must first determine "whether the Commissioner applied the correct legal standard." *Jackson v. Barnhart*, No. 06-CV-0213, 2008 WL 1848624, at *6 (W.D.N.Y. Apr. 23, 2008) (quoting *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Failure to apply the correct legal standards is grounds for reversal." *Id.* (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative

force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

## DISCUSSION

The Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether an SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

In her decision in this case, the ALJ noted that SSI "is not payable prior to the month following the month in which the application for SSI was filed." Tr. at 16 (citing 20 C.F.R. § 416.335). Hence, the ALJ reviewed Plaintiff's medical history dating back to 2006, but she noted that the relevant period began on August 22, 2016, the filing

4

date of the application. Tr. 16. Thereafter, the ALJ followed the five-step sequential evaluation process and found that Plaintiff was not disabled for the purposes of SSI. Tr. 32.

At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 22, 2016, the filing date. Tr. 17. At step two, the ALJ determined that Plaintiff had the following severe impairments: chronic dry eyes and blepharitis (eyelid inflammation that affects the eyelashes or tear production), major depressive disorder, anxiety, somatoform disorder, and attention deficit hyperactivity disorder (ADHD). Tr. 18. At step three of the analysis, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the Commissioner's listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 18. The ALJ expressly considered the listings for "special senses," "neurological," and "immune system," as well as the "paragraph B" and "paragraph C" criteria for mental impairments. Tr. 19.

Then, before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 416.945. After careful consideration of the entire record, the ALJ determined that Plaintiff had the RFC to perform a range of medium work as defined in 20 C.F.R. § 416.967(c), stating:

> The claimant could sit eight hours, four hours at a time; she could stand/walk six of eight hours, three hours at a time. She should avoid

> bright lights and direct exposure to work in the sun. The claimant could occasionally tolerate humidity/wetness, pulmonary irritants (fumes, odors, dust, gases, poor ventilation), and extreme of heat/cold. Due to mental impairments, the claimant could understand, remember, and carry out instructions for routine, repetitive work. She could sustain attention for two-hour segments of time in an eight-hour day. The claimant could tolerate brief and superficial interactions with coworkers, supervisors, and the general public. She could adapt to changes for routine repetitive type work.

Tr. 20 (internal citations to the record omitted).

Based on this RFC, and on the testimony of the vocational expert, the ALJ found that Plaintiff was not capable of performing any of her past relevant work as a furniture salesperson, a window treatment salesperson, an interior design material salesperson, or a home remodeling salesperson. Tr. 30. However, considering Plaintiff's age, education, work experience, and RFC, as well as the vocational expert's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform. Tr. 30. Specifically, the ALJ found Plaintiff would be able to perform such unskilled jobs as packager, prep cook, laundry worker, routing clerk, mailroom clerk, and office helper. Tr. 31.

In seeking reversal of the Commissioner's decision, Plaintiff argues that the ALJ improperly discounted the medical opinion of Dr. Amber Saunders, M.D., who Plaintiff claims to be her treating psychiatrist, while granting significant weight to a consultative psychiatric examiner, Dr. Susan Santarpia, Ph.D.. Pl. Mem. of Law, 12–18, Nov. 7, 2019, ECF No. 8-1. In particular, Plaintiff states that in weighting their respective medical opinions, not only did the ALJ fail to consider Dr. Saunders'

6

opinion in light of the non-exclusive factors set forth by the Second Circuit in *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008), but she also relied too heavily on Dr. Santarpia's opinion.

Dr. Saunders' Medical Opinion

In December 2017, Dr. Saunders submitted a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" to the New York State Office of Temporary and Disability Assistance. Tr. 759. In that document, Dr. Saunders indicated that Plaintiff's mental health conditions included major depressive disorder, anxiety disorder, ADHD, and anxiety secondary to general medical condition. Tr. 759. On a "functional limitations" checklist, Dr. Saunders checked that Plaintiff had "no evidence of limitations" in her ability to interact appropriately with others, or to maintain basic standards of personal hygiene and grooming. Tr. 760. Dr. Saunders checked that Plaintiff was "moderately limited" in her ability to: understand and remember instructions, carry out instructions, maintain attention and concentration, make simple decisions, and maintain socially appropriate behavior. Tr. 760. Dr. Saunders checked that Plaintiff appeared "very limited" in her ability to function in a work setting at a consistent pace. Dr. Saunders further opined that "fast paced," "high stress," and "high workload" work environments were contraindicated by Plaintiff's medical condition. Tr. 760. Lastly, Dr. Saunders opined that Plaintiff had a severe impairment which had lasted or was expected to last at least 12 months because she "has severe anxiety,

stemming from [a] chronic medical condition which causes significant physical impairment leading to panic." Tr. 760.

In her decision, the ALJ gave "some weight" to Dr. Saunders' opinion regarding the "moderate limitations" Dr. Saunders identified in the employability assessment, and to Dr. Saunders' opinion that Plaintiff could not work in a fast paced, high stress, or high workload environment. Tr. 27. However, the ALJ observed that subsequent treatment notes indicated Plaintiff's condition improved to the point where she was able to manage her symptoms, stable, and functioning in the community.  Tr. 27. Therefore, the ALJ found that "Dr. Saunders's [sic] assessment that the claimant was 'very limited' is not supported by evidence in the record." Tr. 27.

The "Treating Physician Rule"

For claims filed before March 27, 2017, 20 C.F.R. § 404.1527 requires that the "treating physician rule" be applied when determining a claimant's disability status. § 404.1527(c)(1) provides that, generally speaking, the medical opinion of a source who has examined the claimant is entitled to greater weight than a source who has not. Further, § 404.1527(c)(2) states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

in your case record, we will give it controlling weight.[1]

"[I]t is well settled that the ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Burgess*, 537 F.3d at 131. Nevertheless, the Second Circuit has cautioned that "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Indeed, the regulations require that the treating source's medical opinion be controlling *only* if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." 20 C.F.R. § 404.1527(c)(2).

Where the treating source's medical opinion does not meet these criteria, the ALJ is required to give "good reasons" for the weight assigned to the opinion. *Id.* The ALJ must determine the weight of the opinion by analyzing, among others, the factors identified in *Burgess*: length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion by relevant evidence, consistency with the record as a whole, the source's level of specialization, and other relevant factors. *See* 20 C.F.R. § 404.1527(c); *Burgess*, 537 F.3d at 131.

An ALJ's failure to explicitly apply the *Burgess* factors when assigning weight to a treating physician's opinion is a procedural error. *Estrella v. Berryhill*, 925 F.3d

---

[1] For claims filed after March 27, 2017, the rules in § 404.1520c apply to the evaluation of opinion evidence.

9

90, 96 (2d Cir. 2019) (citing *Selian v. Astrue*, 708 F.3d 409, 419–20 (2d Cir. 2013)). Nevertheless, if "a searching review of the record" assures the reviewing court that the procedural error was harmless, and "that the substance of the treating physician rule was not traversed," then the reviewing court will affirm the ALJ's decision. *Estrella*, 925 F.3d at 96 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

In the present case, the ALJ committed procedural error when she did not explicitly apply the *Burgess* factors while assigning weight to Dr. Saunders' opinion. However, after an independent, "searching review" of the record as a whole, including both the ALJ's decision, and Dr. Saunders' opinion, the Court finds that the substance of the treating physician rule was not traversed in this case. The ALJ's otherwise thorough opinion allows this court to conclude that the ALJ's error was harmless, and her weighting of Dr. Saunders' opinion was based on substantial evidence.

With respect to the length of Plaintiff's treatment relationship with Dr. Saunders and frequency of examination, the record indicates that at the time of Dr. Saunders' opinion statement on December 2017, the length of the relationship spanned a few months at most, with examination on a monthly basis. Dr. Saunders is associated with the Erie County Medical Center (ECMC), where Plaintiff was seen for a mental health assessment and history on September 12, 2016.  Tr. 539. A treatment plan was recorded for Plaintiff by ECMC on May 16, 2017, with a licensed clinical social worker listed as the "responsible person" for supportive therapy every month and Dr. Isuan Asikhia, M.D. listed as the "responsible person" for medication

management every month. Tr. 882. On August 15, 2017, Plaintiff's treatment plan was updated, and Dr. Asikhia was again listed as the "responsible person" for medication management, with frequency still listed as "every month." Tr. 879–80. The treatment plan was updated a second time on November 15, 2017, and this time Dr. Saunders was listed as the responsible person for medication management every month. Tr. 876.

While the record is unclear as to the precise time of transition between Dr. Asikhia and Dr. Saunders as the "responsible person" for medication management, it is clear that it was no more than a few months prior to Dr. Saunders' opinion on December 5, 2017. Moreover, the frequency of examination appears to be only "every month," and the nature of the relationship is "medication management" rather than therapy. Further, Dr. Saunders is listed as a "resident," and her notes are all co-signed by an attending physician, which indicates she may still be in the process of developing her specialization. *See, e.g.,* Tr. 888.

Most significantly, Dr. Saunders' opinion is not consistent with the record as a whole. The ALJ summarized the medical evidence in the record relevant to Plaintiff's mental functioning as follows:

> The claimant's mental health treatment has primarily been medication management and infrequent counseling therapy. Mental status examinations indicated some variable mood and affect. However, most records showed normal clinical findings, including psychological consultative examination and medication management notes including June 2018. During therapy sessions, the claimant reported decreased depression, less stress, and greatly improved attention and concentration.

> Although claimant was hospitalized from June 21 to June 28, 2016 due to mental health issues, clinicians have not expressed any overt concerns during the relevant period. The claimant has not required further hospitalization or inpatient care. The claimant was encouraged increased therapy sessions [sic], to enhance functioning, though she declined additional therapy. The claimant was noted in April 2017 with smoking marijuana twice daily. She was counseled on drug abuse and was informed that to continue medications she "must stop drug abuse.' The claimant reported she stopped using marijuana and no disabling limitations are indicated. Medications were adjusted for efficacy. She receives routine and conservative mental health care every one or two months . . . .
>
> The claimant testified to limited daily activities, though there does not appear to be a physical or mental impairment to prevent her from being more active. Notwithstanding, per testimony, she does laundry. She assisted with care for her mother. In a Function Report, the claimant stated that she shopped for groceries. She cleaned her apartment and was very active with meal preparation. She drove a car . . . . To her credit, she informed her therapist she was looking for work . . . . Though the claimant has severe impairment(s), no evidence indicates work-precluding limitations for a finding of disabled . . . .

Tr. 26–27 (internal citations to the record omitted).

The Court has reviewed the record, and finds the ALJ's recitation of the medical evidence – which is inconsistent with Dr. Saunders' opinion – to be accurate. Accordingly, the Court finds that the treating physician rule has not been traversed, and that the ALJ's assignment of only "some weight" to Dr. Saunders' opinion is supported by substantial evidence. *See Burgess*, 537 F.3d at 128 ("[T]he opinion of the treating physician is not afforded controlling weight where ... the treating physician issued opinions that are not consistent with ... the opinions of other medical experts . . ., for [g]enuine conflicts in the medical evidence are for the Commissioner to resolve

. . . .").

Dr. Santarpia's Medical Opinion

As indicated above, Plaintiff also argues that the ALJ relied too heavily on Dr. Santarpia's medical opinion. Dr. Santarpia saw Plaintiff for a consultative psychiatric examination on October 24, 2016. Tr. 550. In the course of taking a psychiatric history, Dr. Santarpia noted that Plaintiff reported that her depressive symptomatology was exacerbated by recent stressors of unemployment and medical conditions. Tr. 551. Plaintiff also reported that current medication and counseling was controlling the symptoms, and that Adderall was controlling her concentration difficulties. Plaintiff denied suicidal or homicidal ideation, and did not report anxiety-related or manic symptomatology, or panic attacks. Tr. 551. Plaintiff's mental status examination showed her thought process was coherent, her attention and concentration intact, her memory skills grossly intact, her cognitive functioning was average, and her insight and judgment was average. Tr. 552.

Dr. Santarpia ruled out bipolar disorder and diagnosed adjustment disorder with depressed mood. Tr. 553. In her medical source statement, Dr. Santarpia stated that Plaintiff presents as able to follow and understand simple instructions, perform simple tasks independently, maintain concentration and attention, make appropriate decisions, relate adequately with others and deal with stress within normal limits. Tr. 553. She stated that Plaintiff had mild to moderate impairment in learning new tasks and performing complex tasks independently. Tr. 553.

In her decision, the ALJ gave Dr. Santarpia's opinion "significant weight." Tr. 27. The ALJ noted that the clinical findings during Dr. Santarpia's examination of Plaintiff were "essentially normal," but that other treatment notes indicated some limitations due to mental symptoms. Tr. 27. Therefore, the ALJ noted that her RFC finding was not inconsistent with Dr. Santarpia's opinion, but was "claimant favorable." Tr. 27.

The Court's review of the ALJ's decision and the record reveals that the ALJ's assignment of significant weight to Dr. Santarpia's opinion was supported by substantial evidence. The Second Circuit has consistently "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (per curiam) (citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir.1990)). However, the ALJ's decision shows that she did not over-rely upon Dr. Santarpia's opinion. Rather, the ALJ considered Dr. Santarpia's opinion, the opinion of state agency psychological consultant Dr. Dipeolu, Ph.D., Plaintiff's own testimony and Functional Report, and the objective evidence to formulate an RFC that is consistent with the record as a whole.[2]

---

[2] Plaintiff also raises, in an abbreviated form, an objection to the ALJ's formulation of an RFC that was more favorable to Plaintiff than indicated in Dr. Santarpia's opinion. Plaintiff cites *Ippolito v. Comm'r of Soc. Sec.*, 2019 WL 3927453 at *4 (W.D.N.Y. Aug. 19, 2019) for the proposition that "[a]n ALJ cannot support a highly specific RFC with a consultative examiner when the ALJ expressly states that the consultative examiner understated the Plaintiff's limitations." Pl. Mem. of Law at 17. *Ippolito* is distinguishable from the present case. In *Ippolito*, the district court observed that "the sole medial opinion of record to assess Plaintiff's RFC was issue by [a] consultative examiner . . . ." *Ippolito*, 2019 WL 3927453 at *3. The ALJ stated that the consultative examiner's opinion was given partial weight, but failed to specify the portions of the opinion that were credited. *Id*. at *4. In the present case, by contrast, the ALJ considered four medical opinions, noted that despite the consultative examiner's findings the treatment notes did indicate some limitations due to mental symptoms, and

14

Therefore, Plaintiff's argument regarding the ALJ's treatment of Dr. Santarpia's medical opinion is without merit.

## CONCLUSION

In sum, the Court finds that the ALJ's decision applied the appropriate legal standards, and rests on adequate findings supported by evidence having rational probative force. Accordingly, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings (ECF No. 8) is denied, and the Commissioner's motion (ECF No. 10) is granted. The Clerk of Court is directed to close this case.

DATED:    September 08, 2020
          Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

proceeded to discuss the other opinions and the limitations they noted. *See esp.* Tr. 27. The ALJ is not tasked with picking a single right opinion and making an RFC finding based solely on that opinion, but rather is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The ALJ's finding in this case is supported by substantial evidence in the record.